**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| SOUTHWEST RISK, L.P., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-1745 |
| | § | |
| IRONSHORE SPECIALTY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER DENYING MOTION FOR MORE DEFINITE**
**STATEMENT AND TO JOIN REAL PARTY IN INTEREST AND SETTING PRETRIAL**
**CONFERENCE**

**I.     Background**

Hurricane Ike struck southeast Texas six years ago, but its effects persist in Texas state and

federal courts.  Southwest Risk, LP ("Southwest"), an insurance broker, specializes in securing

property and casualty insurance for real estate and construction projects.  One of Southwest's

projects involved insuring various apartment complexes owned by the American Real Estate

Advisory Council ("AMREAC") in Houston, Texas.  Southwest was to obtain a $50 million "tower"

of coverage for these properties, spread across three "layers"—that is, three independent policies.

Southwest timely arranged for two layers of insurance before Hurricane Ike emerged as a threat.  The

first layer was a policy providing up to $25 million in coverage.  The second layer was a policy that

provided an added $10 million.  Southwest was to provide a third policy layer for an another $15

million.  Before Southwest did so, however, Hurricane Ike was moving toward Houston.  Because

the insurers were unwilling to issue a policy in the face of an impending hurricane, Southwest could

1

not obtain the third layer of coverage for hurricane-related property damage.

As expected, Hurricane Ike caused considerable damage. The AMREAC project owners submitted claims under the two insurance policies. They exhausted the policy limits of the first two layers covering hurricane-related damage. The owners were unable to collect on the third layer of insurance they had asked Southwest to place because Southwest had failed to obtain the policy before the storm threatened.

In 2012, the AMREAC plaintiffs sued Southwest in Texas state court for roughly $11 million. Southwest had taken out a professional liability policy with Ironshore Specialty Insurance Company ("Ironshore") in December 2010 that covered up to $5 million for "claims made" between March 2009 and February 2013 for Southwest's "negligent act[s], error[s], or omission[s]." (Docket Entry No. 13, at 9 (quoting Policy)). Ironshore agreed to defend Southwest under the professional liability policy and reserved its rights to assert policy defenses. Despite receiving repeated offers for up to the $5 million policy limit, Ironshore refused to settle. In May 2013, Ironshore informed Southwest that the professional liability policy did not cover the underlying suit because of various specified policy defenses. Southwest settled the underlying suit by paying $6.9 million in June 2013.

Nearly one year later, Southwest and ClearView (which then owned Southwest) filed this suit against Ironshore, alleging breach of the professional liability insurance contract and violations of the Texas Insurance Code and seeking damages totaling $27,600,000, plus interest and attorney's fees. (Docket Entry No. 1). Ironshore has moved for a more definite statement under Federal Rule of Civil Procedure 12(e) and objected to Southwest's failure to designate a real party in interest under Federal Rule of Civil Procedure 17(a). Ironshore asks this court to order the plaintiffs to amend to identify the real party or parties in interest, the details of their citizenship for purposes of

2

diversity jurisdiction, and the factual and legal basis for each party's claimed interest. (Docket Entry No. 14). Ironshore identified the Houston International Insurance Group ("HIIG") as a potential real party in interest that Southwest and ClearView did not name in the lawsuit even though HIIG had indemnified Southwest and ClearView for their liability in the underlying case and paid part of the amount that settled the underlying lawsuit. (*Id.* at 2).[1] Southwest responded that HIIG ratified this action and no further pleading is required. (Docket Entry No. 16). Ironshore replied, arguing that HIIG should be required to join the lawsuit. (Docket Entry No. 17).

Based on the motion, the briefs, the pleadings, the record, and the applicable law, the court denies the motion for a more definite statement and denies Ironshore's request to require Southwest and ClearView to add HIIG. The reasons are explained below.

## II.     The Applicable Legal Standards

### A.     A Rule 12(e) Motion for a More Definite Statement

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). However, "the class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small. As the cases make clear, the pleading must be sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories on which the claimant might proceed." 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1376 (3d ed. 2004). A motion for more definite statement is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of

---

[1]  Because HIIG has the same citizenship as ClearView, its presence (or not) in this suit does not affect the court's subject-matter jurisdiction.

3

detail. *See Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001).

### B.    A Rule 17 Motion to Name the Real Party in Interest

Under Rule 17(a)(1) of the Federal Rules of Civil Procedure, "[a]n action must be prosecuted in the name of the real party in interest." This party is "the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *In re Signal Intern., LLC*, 579 F.3d 478, 487 (5th Cir. 2009) (citing *Farrell Constr. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 140 (5th Cir. 1990)). The Rule 17(a) requirement serves "to assure a defendant that a judgment will be final and that res judicata will protect it from having to twice defend an action, once against an ultimate beneficiary of a right and then against the actual holder of the substantive right." *Id.* (citing *Farrell Const.*, 896 F.2d at 142); *see also Gogolin & Stelter v. Karn's Auto Imps., Inc.*, 886 F.2d 100, 102 (5th Cir. 1989) ("The purpose of the rule is to prevent multiple or conflicting lawsuits by persons such as assignees, executors, or third-party beneficiaries, who would not be bound by res judicata principles.").

Although the real party in interest must prosecute the action, "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." FED. R. CIV. P. 17(a)(3). "This provision requires the defendant to object in time to allow the opportunity for joinder of the ostensible real party in interest, and the defense may be waived if the defendant does not timely object." *In re Signal*, 579 F.3d at 488–89. "Formal joinder or substitution of the real party in interest will not be necessary when the real party ratifies the commencement of the action." WRIGHT & MILLER, 6A FED. PRAC. & PROC. CIV. § 1555 (3d ed.). "A proper ratification under Rule 17(a) requires that the ratifying party (1) authorize continuation

of the action and (2) agree to be bound by its result." *ICON Grp., Inc. v. Mahogany Run Development Corp.*, 829 F.2d 473, 478 (3d Cir. 1987); *see also Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 307 (5th Cir. 2001) (citing *Naghiu v. Inter–Continental Hotels Grp, Inc.*, 165 F.R.D. 413, 421 (D. Del. 1996), for same proposition); *In re Whittington*, 2014 WL 4163589, at *20 (W.D. Tex. Aug. 20, 2014) (same); *Auday v. Wetseal Retail, Inc.*, No. 1:10-CV-260, 2013 WL 2457717, at *7 (E.D. Tenn. June 6, 2013). "After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." FED. R. CIV. P. 17(a)(3).

The pending motions are analyzed under the applicable legal standards.

**III.  Analysis**

Southwest acknowledges that HIIG, which indemnified ClearView for Southwest's liabilities arising from its failure to secure third-layer insurance and paid part of the amount Southwest paid to settle the underlying lawsuit, is *a* real party in interest. (Docket Entry No. 16, at 1). But HIIG need not be named as an added real party in interest because it has ratified the filing and prosecution of this lawsuit by the named plaintiffs, Southwest and ClearView. "If the insurer has paid the entire loss suffered by the insured, it is the only real party in interest and must sue in its own name." *Underwriters at Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 484 (5th Cir. 1996) (citing *United States v. Aetna Casualty & Sur. Co.*, 338 U.S. 366, 379-81 (1949)). But "if the insurer 'has paid only part of the loss, both the insured[s] and the insurer . . . have substantive rights against the tortfeasor which qualify them as real parties in interest.'" *Id.* (quoting *Aetna Cas. & Sur.*, 338 U.S. at 379-81).

Southwest and ClearView allege that Ironshore breached the professional liability insurance contract and committed extracontractual statutory violations involving unfair settlement practices.

5

Southwest and ClearView seek $6.9 million in damages from the breach of contract and treble damages totaling roughly $20 million for the statutory violations. HIIG indemnified Southwest and ClearView for the policy limit of $5 million. But HIIG paid only part of the damages Southwest and ClearView paid to settle the underlying case. All three parties—HIIG, Southwest, and ClearView—are "real parties in interest" in the present suit. *Underwriters at Interest*, 79 F.3d at 484; *see also BAC Home Loans Servicing, LP v. Texas Realty Holdings, LLC*, 901 F. Supp. 2d 884, 908 (S.D. Tex. 2012) ("'There may be multiple real parties in interest for a given claim.'" (quoting *HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1196 (3d Cir. 1996))). The issue is not substitution of the only real party in interest but rather whether joinder of an added real party in interest is required.

Southwest argues that HIIG need not be joined because it has ratified Southwest's and ClearView's prosecution of this suit under Fed. R. Civ. P. 17(a)(3). Southwest points to the facts that HIIG hired counsel, gave its express approval to the litigation, and agreed to be bound by the result. (Docket Entry No. 16, at 2); *see also* FED. R. CIV. P. 17(a)(3). Although "the ratification device has been sparingly used," "[i]ts principal area of application would appear to comprise those cases where"—as here—"an insurance company has paid all or a portion of a claim and becomes subrogated to its insured's right of recovery." *S. Nat. Bank of Houston, Tex. v. Tri Fin. Corp.*, 317 F. Supp. 1173, 1187-88 (S.D. Tex. 1970), *aff'd in part, vacated in part on other grounds sub nom. S. Nat. Bank of Houston v. Crateo, Inc.*, 458 F.2d 688 (5th Cir. 1972); *see also Star Mfg. Co. v. Mancuso*, 680 F. Supp. 1496, 1499 (D. Kan. 1988) ("The use of ratification in lieu of substitution or joinder is rare. It is principally applied where an insurance company has paid all or a portion of a claim and becomes subrogated to its insured's right of recovery.").

Ironshore contends that Rule 17(a)(3)'s ratification provision applies only when a plaintiff brings the action in its own name "as a result of an understandable mistake, because the determination of the correct party to bring the action is difficult." *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) (citing FED. R. CIV. P. 17(a), Advisory Committee Notes, 1966). Southwest and ClearView were aware of HIIG's interest because it indemnified part of Southwest's loss. Ironshore argues that as a result, under *Wieburg*, "HIIG should be required to join the lawsuit as a Plaintiff." (Docket Entry No. 17, at 3). But unlike the plaintiff in *Wieburg* and in the subsequent Fifth Circuit decisions applying *Wieburg*'s "understandable mistake" rule, Southwest and ClearView are also real parties in interest. *Cf. Wieburg v. GTE Southwest, Inc. (Wieburg II)*, 71 F. App'x 440, at *2 (5th Cir. 2003) ("To avoid dismissal . . . a plaintiff who is *not the real party in interest* must show, first, that he sued in his own name based on an understandable mistake and, second, that he did not have a reasonable time to correct the pleading deficiency." (emphasis added) (citing *Wieburg*, 272 F.3d at 308)); *Magallon v. Livingston*, 453 F.3d 268, 273 (5th Cir. 2006) (*Wieburg* "holds that a plaintiff must have a reasonable basis *for naming the wrong party* to be entitled to ratification, joinder, or substitution." (emphasis added)). *Wieburg* does not compel the result Ironshore seeks.

*Wieburg* dealt with a bankruptcy dispute in which there was, and could be, only one real party in interest: the Trustee. *See Wieburg*, 272 F.3d at 306 ("Because the claims are property of the bankruptcy estate, the Trustee is *the real party in interest with exclusive standing* to assert them." (emphasis added)); *see also U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014) ("In the bankruptcy context, the bankruptcy trustee is the real party in interest with respect to claims falling within the bankruptcy estate. The bankruptcy trustee therefore has *exclusive standing* to

assert undisclosed claims that fall within the bankruptcy estate." (citing *Wieburg*, 272 F.3d at 306)).

Without considering whether there was any "understandable mistake" in the plaintiff's failure to

name the Trustee as a party, the *Wieburg* panel first examined whether the Trustee had already

ratified the action such that the defendant would be protected from multiple judgments.  The court

found no such protection: "Wieburg's counsel apparently recognized this defect in the settlement

agreement, as reflected in his May 5, 2000, letter to the district court's law clerk, in which he stated

that he was seeking confirmation from the Trustee of his being bound by any settlement or judgment.

The record contains no indication that such confirmation was ever given by the Trustee." *Id.* at 307

(citations omitted).  The court cited with approval an earlier Fifth Circuit case, *Big John, B.V. v.

Indian Head Grain Co.*, 718 F.2d 143, 147 (5th Cir. 1983), for the proposition that "formal joinder

or substitution of [the] real party in interest [is] not necessary when he ratifies commencement of

[the] action," *Wieburg*, 272 F.3d at 307, but emphasized that "proper ratification requires [the]

ratifying party to authorize continuation of [the] action and agree to be bound by [the] result," *id.*

(citing *Naghiu v. Inter–Continental Hotels Group, Inc.*, 165 F.R.D. 413, 421 (D. Del. 1996)).[2]  In

the present case, by contrast, HIIG did agree to be bound by the result, plugging the hole the *Wieburg*

record presented.

In *Wieburg*, the panel discussed the plaintiff's "understandable mistake" in failing to name

the Trustee and "the propriety of the district court's *dismissal* of the action" only after concluding

---

[2]  In *Big John*, the Fifth Circuit affirmed the district court's exclusion of an alleged agreement
between the parties under which Big John would carry insurance on the bailed seeds in return for a lower
storage rate because "Big John's insurers ratified the action which their counsel took in the name of Big John
and Indian Head was aware that Big John's insurers were suing in the insured's name." *Big John*, 718 F.2d
at 147; *see also Urrutia Aviation Enterprises, Inc. v. B.B. Burson & Assocs., Inc.*, 406 F.2d 769, 770 (5th Cir.
1969) (per curiam) (concluding that there was "full compliance with both the letter and spirit of Rule 17"
in part because the real party in interest gave "formal ratification of commencement of the action").

that the Trustee had not ratified. *Id.* at 308 (emphasis added). This discussion does nothing to call *Big John*'s continued vitality into question. The panel focused on whether to give a non-real party in interest "reasonable time" to obtain the ratification, joinder, or substitution of the real party in interest when that is required because no real party in interest filed the case. The panel did not examine whether another real party in interest must join or ratify an action brought by a real party in interest. *See id.* at 308 ("Rule 17(a) should not be applied blindly *to permit substitution of the real party in interest in every case.*" (emphasis added and quotations omitted)).

The Advisory Committee Notes to Rule 17(a)(3) are consistent. The Notes confirm that the subsection was added "simply in the interests of justice," in order "to prevent forfeiture." *Wieburg*, 272 F.3d at 308 (quoting Fed. R. Civ. P. 17(a), Advisory Committee Notes 1966). The subsection prohibits a district court from "dismiss[ing]" an action brought by the wrong party if due to understandable mistake. *See* FED. R. CIV. P. 17(a)(3); *Wieburg*, 272 F.3d at 308. But when the issue is ratification by, versus joinder of, *a* real party in interest in a suit filed by other real parties in interest, forfeiture is not an issue. *Cf.* FED. R. CIV. P. 15, Advisory Committee Notes, 1966 (Rule 17(a) is designed "[t]o avoid *forfeitures* of just claims" (emphasis added)). *Wieburg*'s "understandable mistake" standard does not govern the narrow circumstance present here, when a real party in interest fails to name another real party in interest and the question is whether the unnamed party has ratified the action or must be joined.[3]

---

[3] Even if *Wieburg*'s "understandable mistake" standard applied here, it is satisfied. *See In re Whittington*, 2014 WL 4163589, at *21 ("[T]he [understandable mistake] standard is not overly strict; the case law demonstrates that the Fifth Circuit's 'gloss' does not function as some sort of high, extratextual hurdle."). This is not a case where the plaintiffs, who themselves are real parties in interest, "brought claims they knew they had no right to bring." *In re Enron Corp. Secs. Derivative & ERISA Litig.*, 279 F.R.D. 395, 411 (S.D. Tex. 2011). Nor were the plaintiffs here "deceitful, dilatory, or strategic in making or in failing to correct a Rule 17 problem." *In re Whittington*, 2014 WL 4163589, at *21. And because HIIG indemnified

Ironshore contends that even if Rule 17(a)(3) applies, HIIG's ratification is inadequate. (Docket Entry No. 17, at 4). Southwest submitted an affidavit from HIIG's vice-president stating that it "ratified Southwest's and ClearView's prosecution of this lawsuit at its inception, ratifies its continued prosecution, and acknowledges that HIIG is bound by the outcome of this lawsuit." (Docket Entry No. 16-1, at 2). The affidavit further states that "HIIG is aware of the requirements of Rule 17(a)(3) and chooses ratification over joinder as a party." (*Id.*). These statements meet the case law requirements for effective ratification. *See S. Nat. Bank of Houston, Tex.*, 317 F. Supp. at 1188 (concluding that the defendant was "fully protected by the ratification by First, and that joinder would be a useless formality" because the real party in interest "expressly agreed 'that it will be bound by the final determination made in this case.'"); *Jenkins v. Wright & Ferguson Funeral Home*, 215 F.R.D. 518, 522 (S.D. Miss. 2003) (holding that the parties' "Ratification Agreement was a valid transfer to Jenkins of the right to prosecute this cause of action in her own name" because the real party in interest "authorized continuation of the subject action in the name of Jenkins," "agreed to be bound by the results of this case," and satisfie[d] the purpose of Rule 17(a), as contemplated by the *Wieburg* court," that "the judgment in this case will be final and that res judicata will protect it from having to defend against Jenkins' claims in separate causes of action").

Ironshore argues that it needs HIIG as a party because it may have discoverable information. But even if HIIG does have such information, which is disputed, such information can be obtained without adding it as a party. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 292

---

only part of their loss and had nothing to do with Southwest's failure to secure third-layer insurance or its application for professional liability insurance from Ironshore, the failure to name HIIG was not "a mistake on an obvious point." *Id.* Finally, Southwest and ClearView promptly responded by documenting HIIG's formal ratification of the action. *See id.* at *21 ("[T]here was little delay between the Individual Plaintiffs' being alerted to their error and their remedying it.").

(2008) (rejecting defendants' argument that non-party assignors "may not comply with discovery requests served on them" because "a district court can, if appropriate, compel a party [such as the assignees] to collect and to produce whatever discovery-related information is necessary" (citing FED. R. CIV. P. 26(b)(1), 30-31, 33-36)).

**III.   Conclusion**

Ironshore's motion for a more definite statement and to join HIIG is denied. (Docket Entry No. 14). The parties are ordered to appear for a pretrial status and scheduling conference on **February 26, 2015, at 8:30 a.m.,** Courtroom 11-B at 515 Rusk Street, Houston, Texas, 77002.

SIGNED on February 11, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge